IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BOBBI COUGHLIN,                    )
                                   )
            Plaintiff,             )    2:08-cv-02772-GEB-JFM
                                   )
      v.                           )    ORDER GRANTING IN PART AND
                                   )    DENYING IN PART DEFENDANT'S
CALIFORNIA DEPARTMENT OF           )    MOTION FOR SUMMARY JUDGMENT[*]
CORRECTIONS AND REHABILITATION     )
and TOM MAUGERI,                   )
                                   )
            Defendants.            )
_____)

On February 4, 2010, Defendant California Department of Corrections and Rehabilitation ("CDCR") filed a motion for summary judgment or in the alternative for summary adjudication on Plaintiff Bobbi Coughlin's five claims: (1) sexual harassment under Title VII of the Civil Rights Act of 1964, §§ 701 *et seq.*, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"); (2) sexual harassment under the California Fair Employment and Housing Act, California Government Code §§ 12940 *et seq.* ("FEHA"); (3) retaliatory harassment under Title VII; (4) retaliatory harassment under FEHA; and (5) failure to prevent

---

[*] This matter is deemed suitable for decision without oral argument.  E.D. Cal. R. 230(g).

1

harassment under FEHA.  For the following reasons, CDCR's summary

judgment motion is GRANTED in part and DENIED in part.[1]

## I.  Background

**A.  October 10, 2006 – October 13, 2007**

Bobbi Coughlin ("Coughlin") began working for CDCR as a

"Cook II" at the Pine Grove Youth Conservation Camp ("Pine Grove") on

October 10, 2006. (Statement of Undisputed Facts ("SUF") ¶ 1.)  Karen

Wheeler ("Wheeler") was Coughlin's official supervisor from October

10, 2006 to October 13, 2007, at which time Wheeler transferred to a

different CDCR facility. (Id. ¶¶ 3, 4; Coughlin Dep. 29:11-14.)

Defendant Tom Maugeri ("Maugeri") worked as a cook at Pine Grove from

"before October 2006" until December 4, 2007, when he was placed on

"Administrative Time Off." (Id. ¶¶ 5, 60.)

"Between October 2006 and October 2007, Maugeri and Coughlin

were friends." (Id. ¶ 11.)  Maugeri commented on Coughlin's hair and

eyes three or four times between October 2006 and October 13, 2007.

(Id. ¶¶ 13-14.)  Coughlin offers testimony that at one point during

this time period she noticed Maugeri "leering" at her while she took

off her sweatshirt. (Coughlin Dep. 76:23-77:5.)  Coughlin testified

that on another occasion, Maugeri commented on her tan skin as she

removed her sweatshirt, making her "uncomfortable." (Id.  77:10-

78:9.)

---

[1]    Coughlin filed her opposition to CDCR's motion four days late
without providing an explanation for the late filing.  CDCR urges the
Court not to consider Coughlin's opposition or in the alternative
requests leave to file a response to Coughlin's Separate Statement.  In
deciding CDCR's motion, the Court considers Coughlin's opposition and
CDCR's Supplemental Reply filed in response to the late opposition.
Since CDCR's Supplemental Reply is deemed a sufficient response to
Coughlin's Separate Statement, CDCR's request to file an additional
response to Coughlin's Separate Statement is denied.

Some time before Coughlin's son's wedding on September 29, 2007, "Coughlin described a pedicure she received in anticipation of her son's wedding . . . .   Maugeri told Couglin he . . . was aroused by the conversation, asked Coughlin to touch his hands, and told Coughlin she was his sexual fantasy." (SUF ¶ 19.)   Coughlin testified that when Maugeri asked her to feel his hands, she touched them with her two index fingers and stated "You are out of control, that's just bizarre.   And you just ruined for me a great moment, you know, and being excited about my son's wedding and taking all the girls and all the moms, you know." (Coughlin Dep. 81:19-23.)   Coughlin testified that Maugeri responded "Well, I have a foot fetish, and, you know, I am turned on." (Id. 81:24-25.)   Coughlin testified "that was the end of the conversation, I just left the room." (Id. 82:22-23.) "Coughlin was not offended by Maugeri's actions between October 2006 and October 13, 2007." (SUF ¶ 21.)

**B.   October 13, 2007 – October 23, 2007**

Wheeler transferred to another facility on or about October 13, 2007. (SUF ¶ 4; Coughlin Dep. 66:1-3.)   "Between October 14, 2007 and October 23, 2007, Coughlin and Maugeri worked together on [four] occasions, for approximately [two and a half] hours each time." (SUF ¶ 25.)   The parties dispute whether Pine Grove Assistant Superintendent Harry Linden ("Linden") "was responsible for supervising the kitchen staff" at Pine Grove during this time period, or whether "the actual supervision and decisions were being made by Maugeri." (Id. ¶ 26.)   Linden testified that as Assistant Superintendent, he was "directly in charge of the kitchen . . .[; he] supervise[d] the kitchen." (Linden Dep. 15:10-12.)   Coughlin testified that "we all knew that [Maugeri] was going to get [the

3

Supervisor position.] . . . [H]e had been acting in that capacity already." (Coughlin Dep. 39:12-15.)  Wheeler testified that before she was hired, Maugeri "was the cook there who did everything." (Wheeler Dep. 14:16-17.)  Wheeler testified that "[b]efore [Wheeler] was hired, . . . [Maugeri] kind of ran the whole show."  (Wheeler Dep. 14:18-21.)  Coughlin testified that "when [Wheeler] left[, Maugeri] became the acting supervisor and he said he had to go through the formal interview, which he laughed about and said it was a joke . . . . Because he knew he already had the job." (Coughlin Dep. 67:1-6.)  Coughlin testified that during the week of Wheeler's last day, Maugeri stated  "I am the acting supervisor." (<u>Id.</u> 67:10-17.) Coughlin testified that Maugeri told her prior to Wheeler leaving that "he was finally going to get to be the supervisor, not just in doing the work, but get the job."  (<u>Id.</u> 66:11-13.)

      Coughlin testified that during the time period of October 14 to October 23, 2007, Maugeri "got bold.  And I don't know how to tell you that in words other than that he just felt like he was on top of the world, I think."  (Coughlin Dep. 86:1-3.)  Coughlin testified that Maugeri "made comments like, I thought about you over the weekend. And I think he meant it in a sexual way."  (<u>Id.</u> 87:16-18.)  She further testified that on one occasion "he told me a story about some gal he had made out with and he had her panties in his locker.  And I am like, [t]hat's out of control.  He told me the story twice, and I don't know why he told it to me."  (<u>Id.</u> 87:7-12.)  Additionally, "Between October 14, 2007 and October 23, 2007, Maugeri told Coughlin that he tried to have oral sex with his wife."  (SUF ¶ 33.)

      Coughlin testified that her reaction to Maugeri during this time period was "to play it off, or tell him, You are out of control

4

or, you know, You know I am married.  Or I would just leave the area
that he was in." (Coughlin Dep. 88:4-8.)

"Maugeri told Coughlin that he had watched pornography on
the [Pine Grove] computer." (SUF ¶ 34.)  "Sometime prior to October
23, 2007," Maugeri showed Coughlin a pornographic image on his
computer and stated that the woman in the image was his sister-in-law
and that she was a "porn-star." (SUF ¶ 26.)  Coughlin testified that
Maugeri convinced Coughlin to look at the image by stating his wife
"looks just like her sister.  Oh, her sister has a website.  You want
to look at it?" (Coughlin Dep. 113:7-14.)

"On October 23, 2007, Maugeri exposed his genitals to
Coughlin in the [Pine Grove] kitchen office." (SUF ¶ 37.)  Coughlin
testified "that on October 23, 2007, Maugeri asked Coughlin if she
wanted to touch his exposed penis." (Id. ¶ 38; Coughlin Dep. 150:9-
17.)  Coughlin testified that Maugeri then stated "I will jack off for
you." (Coughlin Dep. 166:13-14; SUF ¶ 39.)  "He said it a couple
times." (Coughlin Dep. 166:17.)  Coughlin testified that she
responded "No thanks, I'm not interested" and she left the office.
(Id. 166:24-167:3.)

Coughlin testified Maugeri also asked her on October 23,
"Can I kiss you?" (Id. 94:24-25.)  Coughlin responded "No, I'm
married, you are married . . . my husband wouldn't appreciate it, your
wife wouldn't appreciate it.  That's not ok." (Id. 95:16-18.)  She
testified that he "kept persisting," and asked "in a perfect world
would you?" (Id. 95:21-22.)  Coughlin "sarcastic[ally]" responded,
"Maybe in a perfect world, Tom." (Id. 96:2-3.)

Coughlin testified Maugeri acted "inappropriately" with the
male wards.  She testified that "[the wards] would sit on [Maugeri's]

lap and rub his head, and they would . . . say like, I did your mama last night." (Coughlin Dep. 101:13-15.)  Coughlin testified Maugeri said to the male wards "You are my girl.  Is my girl going to come back and see me later?" (<u>Id.</u> 107:17-18.)  Coughlin told Maugeri and the wards, "Guys, this is really not ok.  And . . . the response [she] always got is, This is jailhouse love, this is how we do it here." (<u>Id.</u> 101:18-21.)  Coughlin testified that this behavior was "constant" and "to be conservative, [occurred] once a week." (<u>Id.</u> 102:1-2.)

Coughlin testified that between October 13 and October 24, 2007, she and Maugeri met with Linden and Pine Grove Superintendent Mike Roots ("Roots") and were asked whether they wanted Linden and Roots to hire another person or whether they wanted the overtime. (<u>Id.</u> 138:13-14.)  Coughlin testified that as she and Maugeri walked away from that meeting, Maugeri stated "[Roots] is going to hire someone else with big [tits] like yours." (<u>Id.</u> 138:18-139:10.) Coughlin testified that Maugeri and Roots "were buddies." (<u>Id.</u> 140:11-13.)

**C. October 24, 2007 – November 8, 2007**

"Maugeri was officially promoted to the Supervising Cook position at [Pine Grove] on October 24, 2007." (SUF ¶ 31.)  Coughlin testified that "on or about October 30, 2007" Maugeri stated to her, "I'm so glad I showed you my genitals.  I really will jack off for you" and "asked if Coughlin would kiss him." (Coughlin Dep. 90:13-15, 91:1-3; SUF ¶ 42.)  Coughlin testified that she responded "No thanks dude." (<u>Id.</u> 91:17.)  At that point Coughlin felt she was "in the presence of a predator." (<u>Id.</u> 92:10-11.)

Coughlin testified "that on or about November 6, 2007

Maugeri was 'abrupt' with her in discussing a graduation ceremony."
(Coughlin Dep. 219:20-220:9; SUF ¶ 43.)  "Coughlin reports no other
misconduct by Maugeri . . . between October 24 and November 6, 2007."
(SUF ¶ 44.)  "Coughlin has not spoken with Maugeri since November 7,
2007."  (SUF ¶ 45.)

**D.  November 8, 2007 – June 2008**

    "On or about November 8, 2007, Coughlin reported Maugeri's
alleged misconduct to the [Pine Grove] Superintendent Mike Roots and
to [Pine Grove] Assistant Superintendent Harry Linden."  (SUF ¶ 46.)

    "CDCR has a policy against sexual harassment."  (Id. ¶ 88.)
"CDCR's policy against sexual harassment is available to all CDCR
employees, including Coughlin."  (Id. ¶ 89.)  "Coughlin was provided a
copy of the CDCR policy when she first started working at CDCR."  (Id.
¶ 90.)  "Coughlin acknowledged receipt of CDCR's policy against sexual
harassment."  (Id. ¶ 91.)  "Coughlin attended training that reviewed
CDCR's policy against sexual harassment."  (Id. ¶ 92.)

    "On or about November 9, 2007, Roots took the following
action[s]:

- Altered the kitchen schedule to ensure that Coughlin did not work
  at the same time as Maugeri;

- Reported Coughlin's complaint to his supervisor, the Division of
  Juvenile Justice Administrator Steve Krause;

- Relieved Maugeri of all supervisory duties;

- Contacted the Amador County Sheriff's Department to report
  Maugeri's alleged misconduct;

- Advised Coughlin to immediately report any contact with Maugeri;

- Advised Maugeri that retaliation was prohibited;

- Advised Maugeri to not have any contact with Coughlin, and if
  contact were to occur, to immediately report the contact;

- Advised Coughlin of the Employee Assistance Program."

(SUF ¶ 48 (citations omitted).)

"On or about November 9, [2007], Linden took the following action[s]:

• Reported Coughlin's complaint to the CDCR's Office of Civil Rights;

• Commenced the Local Intervention Process;

• Advised Coughlin of the Employee Assistance Program;

• Advised Coughlin of the CDCR's policy against retaliation;

• Advised Coughlin of her right to complain directly to the Office of Civil Rights, the DFEH, or the EEOC."

(Id. ¶ 49 (citations omitted).)

"Coughlin's internal complaint of sexual harassment was referred to the Office of Internal Affairs." (Id. ¶ 51.) "On or about November 13, 2007, Coughlin made a report to the Amador County Sheriff's Department regarding Maugeri's conduct." (Id. ¶ 52.) "On December 4, 2007, the Amador County Sheriff's Department interviewed Maugeri regarding Coughlin's complaint that Maugeri had exposed himself on October 23, 2007." (Id. ¶ 57.) "On or about December 4, 2007, CDCR learned that Maugeri had admitted exposing himself to Coughlin on October 23, 2007." (Id. ¶ 58.) "On or about December 4, 2007, CDCR placed Maugeri on Administrative Time Off while CDCR continued its investigation into Coughlin's complaints." (Id. ¶ 59.) "On or about December 4, 2007, Linden collected Maugeri's keys from him." (Id. ¶ 60.) "[On] April 7, 2008, [Maugeri] was involuntarily transferred as a Cook II to the Preston Youth Correctional Facility." (Id. ¶ 61.) "Maugeri resigned his employment with CDCR in or about late June 2008." (Id. ¶ 62.)

//

**E.   Coughlin's Employment After Reporting Maugeri's Conduct**

"In 2007, Maugeri lived [in] a house located on [Pine Grove] grounds" and "remained [there] until his resignation in June 2008." (SUF ¶¶ 9, 10.)  "On five occasions between November 16 and November 23, 2007, Coughlin observed Maugeri either in or near his rented home as she drove onto or away from [Pine Grove].  According to Coughlin, Maugeri 'stared' at her during these [five] occasions."  (Id. ¶ 53.) "Coughlin reported these [five] sightings to Roots and/or Linden on November 26, 2007."  (Id. ¶ 54.)  "On or about November 26, 2007, Roots warned Maugeri to avoid contact with Coughlin, including being outside his house and/or staring when Coughlin was arriving or departing from [Pine Grove]."  (Id. ¶ 55.)

"On February 20, 2008, Coughlin signed a Charge of Discrimination with the [Equal Employment Opportunity Commission ("EEOC")] and the California Department of Fair Employment and Housing [("DFEH")]."  (Id. ¶ 70.)  "The Charge of Discrimination was filed by the EEOC on February 27, 2008."  (Id. ¶ 71.)  "According to the Charge of Discrimination, Coughlin claimed she had been harass[ed] by Maugeri[] and retaliated against for being assigned additional shifts [beginning] December 4, 2007[,] when Maugeri was placed on [Administrative Time Off]."  (SUF ¶ 72; Rechhio Decl. Ex. A, Coughlin Dep. Ex. 10.)  The Charge also states that Coughlin was "in constant fear" of Maugeri due to his "menacing" stares as Coughlin arrived at work.  (Recchio Decl. Ex. A, Coughlin Dep. Ex. 10.)

## II.  Legal Standard

In a motion for summary judgment under Federal Rule of Civil Procedure 56(c), the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for

1 trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  If the

2 moving party satisfies its burden, "the non-moving party must set

3 forth, by affidavit or as otherwise provided in Rule 56, specific

4 facts showing that there is a genuine issue for trial."  T.W. Elec.

5 Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th

6 Cir. 1987) (quotations and citation omitted) (emphasis omitted).  "All

7 reasonable inferences must be drawn in favor of the non-moving party."

8 Bryan v. McPherson, 590 F.3d 767, 772 (9th Cir. 2009).

9 **III.  Analysis**

10 **A.  Sexual Harassment under Title VII**

11           CDCR seeks summary judgment of Coughlin's first claim in

12 which Coughlin alleges Maugeri sexually harassed her in violation of

13 Title VII.  (Compl. ¶¶ 8-15.)  CDCR argues: (1) Maugeri was not

14 Coughlin's supervisor until October 24, 2007, and therefore CDCR is

15 not vicariously liable for Maugeri's actions before October 24, 2007;

16 (2) Maugeri's actions were not sufficiently "severe or pervasive"

17 under Title VII; and (3) CDCR is entitled to the "reasonable care"

18 affirmative defense under Burlington Indus., Inc. v. Ellerth, 524 U.S.

19 742 (1998), and Faragher v. City of Boca Raton, 524 U.S. 775 (1998).

20           The United States Supreme Court "outlined the principles

21 governing employer liability for sexual harassment in [Ellerth] and

22 [Faragher], both of which involved the harassment of an employee by

23 her direct supervisor."  Craig v. M & O Agencies, Inc., 496 F.3d 1047,

24 1054 (9th Cir. 2007).  The Court divided cases in which a supervisor

25 harassed a subordinate into two categories:

26           The first category involves situations where a
          supervisor exercising his authority to make
27           critical employment decisions on behalf of his
          employer takes a sufficiently concrete action with
28           respect to an employee.  In these situations,

> termed 'tangible employment action' or 'quid-pro-
> quo' harassment, the employer may be held
> vicariously liable under traditional agency law.
> In the second category, which are known as 'hostile
> environment' claims, the Court tempered the agency
> principles by allowing the employer to assert an
> affirmative defense if the employer is able to
> establish that it acted reasonably and that its
> employee acted unreasonably.

Id. (citations, quotations, and brackets omitted).  Coughlin alleges a

hostile work environment claim.

> To make a prima facie case of a hostile work
> environment, a person must show 'that: (1) she was
> subjected to verbal or physical conduct of a sexual
> nature, (2) this conduct was unwelcome, and (3) the
> conduct was sufficiently severe or pervasive to
> alter the conditions of the victim's employment and
> create an abusive working environment.'

Id. at 1055 (quoting Fuller v. City of Oakland, 47 F.3d 1522, 1527

(9th Cir. 1995)).

### 1.  Maugeri as Supervisor

CDCR argues that Maugeri and Coughlin remained co-workers

until October 24, 2007, when Maugeri was promoted to supervisor, and

therefore CDCR is not vicariously liable for Maugeri's actions

occurring before October 24, 2007.  Coughlin rejoins, arguing "at all

relevant time periods[,] Maugeri had supervisory responsibilities over

her."  (Opp'n 3:2-3.)

> A plaintiff may state a case for harassment against
> the employer under one of two theories: vicarious
> liability or negligence.  Which route leads to
> employer liability depends on the identity of the
> actual harasser, specifically whether he is a
> supervisor of the employee, or merely a co-worker.
> If the harasser is a supervisor, the employer may
> be held vicariously liable.  If, however, the
> harasser is merely a co-worker, the plaintiff must
> prove that the employer was negligent, i.e. that
> the employer knew or should have known of the
> harassment but did not take adequate steps to
> address it.

1  Swinton v. Potomac Corp., 270 F.3d 794, 803 (9th Cir. 2001) (citations
2  omitted).  Coughlin premises CDCR's liability on her argument that
3  Maugeri was Coughlin's supervisor.

4        The issue is whether Coughlin could have reasonably
5  concluded that Maugeri was her supervisor before he received his
6  promotion.  In situations where "there is a false impression that the
7  actor was a supervisor, when he in fact was not, [the employer is
8  exposed to vicarious liability if] the victim's mistaken conclusion
9  [is] a reasonable one."  Ellerth, 524 U.S. at 759. The Equal
10 Employment Opportunity Commission's ("EEOC") guidelines on vicarious
11 liability for supervisor harassment explains circumstances in which an
12 actor could expose an employer to vicarious liability for the actor's
13 sexual harassment of a victim.  See Griggs v. Duke Power Co., 401 U.S.
14 424, 434 (1971) (stating EEOC's interpretation of the guidelines are
15 entitled to great deference).

16 The EEOC Guidelines state:

17      An individual who is authorized to direct another
        employee's day-to-day work activities qualifies as
18      his or her supervisor even if that individual does
        not have the authority to undertake or recommend
19      tangible job decisions.  Such an individual's
        ability to commit harassment is enhanced by his or
20      her authority to increase the employee's workload
        or assign undesirable tasks, and hence it is
21      appropriate   to   consider   such   a   person   a
        'supervisor' when determining whether the employer
22      is vicariously liable.

23      In Faragher, one of the harassers was authorized to
        hire,   supervise,   counsel,   and   discipline
24      lifeguards,   while   the   other   harasser   was
        responsible for making the lifeguards' daily work
25      assignments and supervising their work and fitness
        training.   There was no question that the Court
26      viewed them both as 'supervisors,' even though one
        of   them   apparently   lacked   authority   regarding
27      tangible job decisions.

28

An individual who is temporarily authorized to direct another employee's daily work activities qualifies as his or her 'supervisor' during that time period. Accordingly, the employer would be subject to vicarious liability if that individual commits unlawful harassment of a subordinate while serving as his or her supervisor.

On the other hand, someone who merely relays other officials' instructions regarding work assignments and reports back to those officials does not have true supervisory authority. Furthermore, someone who directs only a limited number of tasks or assignments would not qualify as a 'supervisor.' For example, an individual whose delegated authority is confined to coordinating a work project of limited scope is not a 'supervisor.'

EEOC Guidelines ¶ II(A)(2). The EEOC Guidelines also discuss apparent supervisory authority and vicarious liability for harassment by a supervisor as follows:

In some circumstances, an employer may be subject to vicarious liability for harassment by a supervisor who does not have actual authority over the employee. Such a result is appropriate if the employee reasonably believed that the harasser had such power. The employee might have such a belief because, for example, the chains of command are unclear. Alternatively, the employee might reasonably believe that a harasser with broad delegated powers has the ability to significantly influence employment decisions affecting him or her even if the harasser is outside the employee's chain of command.

EEOC Guidelines ¶ III(B).

Coughlin's evidence is insufficient to controvert the portion of CDCR's motion in which CDCR presents evidence showing it is not vicariously liable for Maugeri's alleged sexual harassment of her occurring before October 13, 2007. Wheeler testified that she "generally supervised" both Maugeri and Coughlin until her departure on October 13, 2007. (Wheeler Dep. 14:3-4.) Coughlin "didn't even know [Wheeler] was leaving until like two days before she left

. . . ."  (Coughlin Dep. 66:4-17.)  This evidence shows Coughlin had no reason to believe Maugeri would be replacing Wheeler as supervisor before Wheeler departed on October 13, 2007.  Further, Coughlin testified that during this time period she would describe Maugeri as her "co-worker" (Coughlin Dep. 65:9) and Wheeler as her "supervisor" (Coughlin Dep. 29:13-14).  Coughlin testified that during this time period Wheeler "let" Maugeri continue the ordering, menu planning, and scheduling since "he had been at the camp for a long time and had already been doing that."  (Coughlin Dep. 29:16-20.)  However, Coughlin testifies that other than those three additional duties, during this time "[Maugeri's] job duties were the same as mine, he was a Cook II . . . ."  (Coughlin Dep. 37:19-21.)  Finally, Coughlin's Complaint alleges "on or about October 13, 2007 . . . Maugeri became the acting supervisor and eventually permanent supervisor of the kitchen staff . . . ."  (Compl. ¶ 9.)

However, Coughlin evidence raises a genuine issue of material fact on the question whether she reasonably believed Maugeri was her supervisor from October 13 to October 23, 2007.  Coughlin testified:

> I just felt like he got like bold about approaching me – after Ms. Wheeler left.  I think he felt like I'm on top of the world now, I got my supervisor job, I get to pick who works with me.  And I just felt like he was – he started telling me stories . . . – it just changed.

(Coughlin Dep. 65:18-25.)  Coughlin testified that Maugeri acted out on this knowledge, discussing how he "already had the job" and stating "I am the acting supervisor."  (Coughlin Dep. 66:11-67:17.)  Following Wheeler's departure, Coughlin could have reasonably believed that Maugeri was "authorized to direct [Coughlin's] day-to-day work

activities" by scheduling, ordering, and creating the menu.  EEOC
Guidelines ¶ III(A)(2).  After Wheeler's departure, "the chains of
command were unclear."  EEOC Guidelines ¶ III(B).  Therefore, this
portion of the motion is denied.

### 2. Severe or Pervasive

CDCR also seeks summary judgment of Coughlin's sexual
harassment claim under Title VII, arguing that although "Maugeri's
conduct was boorish and inappropriate . . . Coughlin cannot establish
that [it] was severe or pervasive."  (Mot. 13:9-14.)  Coughlin
responds, arguing, "there is much evidence from which a trier of fact
[could] reasonably conclude that the conduct was severe or pervasive."
(Opp'n 10:16-17.)

> To prevail on a hostile work environment sexual
> harassment claim, the plaintiff must show that her
> work environment was both subjectively and
> objectively hostile; that is, she must show she
> perceived her work environment to be hostile and
> that a reasonable person in her position would
> perceive it to be so.

Dominguez-Curry v. Nevada Transp. Dep't, 424 F.3d 1027, 1034 (9th Cir.
2005).  "The plaintiff must also prove that 'any harassment took place
because of sex.'"  Id. (quoting Nichols v. Azteca Rest. Enters., Inc.,
256 F.3d 864, 871-72 (9th Cir. 2001)).  CDCR does not dispute that the
harassment here "took place because of sex."  Id.

In determining whether the alleged conduct created an
objectively hostile work environment under the first prong, the court
accesses:

> all the circumstances, including the frequency of
> the discriminatory conduct; its severity; whether
> it is physically threatening or humiliating, or a
> mere offensive utterance; and whether it
> unreasonably interferes with an employee's work
> performance.  Simple teasing, offhand comments, and
> isolated incidents (unless extremely serious) will

1          not amount to discriminatory changes in the terms
         and conditions of employment.
2

3 Id. (citations and quotations omitted).

4       Here, Coughlin has presented evidence that Maugeri's

5 sexually harassing conduct was frequent and persistent.  Coughlin

6 presents evidence that from October 13 to November 8, 2007: Maugeri

7 commented that he thought about Coughlin over the weekend; Maugeri

8 twice told Coughlin a story about a woman he "made out" with and that

9 he kept that woman's "panties" in his work locker; Maugeri told

10 Coughlin about his sexual relationship with his wife; Maugeri told

11 Coughlin he watched pornography on his computer and showed Coughlin a

12 pornographic image of a woman he claimed was his sister-in-law;

13 Maugeri exposed his penis to Coughlin and asked Coughlin "if she

14 wanted to touch his exposed penis"; Maugeri stated "a couple times" "I

15 will jack off for you"; Maugeri persistently asked Coughlin if he

16 could kiss her; Maugeri acted inappropriately with the male wards;

17 Maugeri stated "[Roots] is going to hire someone with big [tits] like

18 you"; Maugeri stated "I'm so glad I showed you my genitals," again

19 offered "to jack off" for Coughlin, and again asked Coughlin if she

20 would kiss him.  Coughlin has also presented evidence that she

21 objected to Maugeri's behavior multiple times by reminding Maugeri

22 that they were both married, by leaving the room, by telling Maugeri

23 he was "out of control," or by saying "no thanks, I'm not interested."

24       Coughlin's evidence is sufficient to raise a genuine issue

25 of material fact on the "objective hostility" prong of her sexual

26 harassment work environment claim, since a reasonable woman could have

27 viewed Maugeri's behavior as humiliating and offensive to the point

28 that it altered conditions of her employment and interfered with her

work performance.  See Ellison v. Brady, 924 F.2d 872, 879 (9th Cir.
1991) (applying "reasonable woman" standard when victim of sexual
harassment is a woman); see also Brooks, 229 F.3d at 927 n.9 ("a
sexual assault by a supervisor, even on a single occasion, may well be
sufficiently severe so as to alter the conditions of employment and
give rise to a hostile work environment claim.").

Coughlin has also presented sufficient evidence to raise a
genuine issue of material fact on the "subjective hostility" prong of
her hostile work environment claim.  Coughlin testified she felt she
was "in the presence of a predator" and that she repeatedly objected
to Maugeri's behavior.  Further, Coughlin eventually complained to her
superiors and to the EEOC, demonstrating that she viewed the
environment as hostile.  See McGinest v. GTE Serv. Corp., 360 F.3d
1103, 1113 (9th Cir. 2004) ("Subjective hostility is clearly
established in the instant case through [Plaintiff's] unrebutted
testimony and his complaints to supervisors and to the EEOC.");
Dominguez-Curry, 424 F.3d at 1036 n.4 (finding that a woman stating
she "finally" decided she "didn't appreciate the rude jokes" and her
complaint to the EEOC were sufficient to satisfy "subjective hostility
prong in order to survive summary judgment").  Therefore, Coughlin has
presented evidence "sufficient to create a genuine issue of material
fact as to whether [Maugeri's] conduct was sufficiently severe or
pervasive to create a hostile work environment," and CDCR's motion is
denied on this ground.  Dominguez-Curry, 424 F.3d at 1035.

### 3.  The Reasonable Care Defense

CDCR also argues it prevails on its "reasonable care"
affirmative defense to vicarious liability, articulated in Ellerth and
Faragher.  Coughlin responds, CDCR "cannot establish as a matter of

17

law that [Coughlin] 'unreasonably' failed to take advantage of any preventive or collective opportunities provided by the employer or to avoid harm otherwise."  (Opp'n 11:4-6.)

> To prevail on the affirmative defense of 'reasonable care,' an employer must prove '(a) that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior, *and* (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by it or to avoid harm otherwise.'

Holly D. v. California Inst. of Tech., 339 F.3d 1158, 1177 (9th Cir. 2003) (quoting Faragher, 524 U.S. at 807-808; Ellerth, 524 U.S. at 765) (emphasis added).  Further, under the second prong of the defense, "an employer who exercised reasonable care . . . is not liable for unlawful harassment if the aggrieved employee could have avoided *all* of the actionable harm.  If *some but not all* of the harm could have been avoided, then an award of damages will be mitigated accordingly."  EEOC Guidelines ¶ V(D) (citing Faragher, 524 U.S. at 807) (emphasis added).

The undisputed facts show that CDCR "exercised reasonable care to prevent and correct promptly" Maugeri's harassing behavior after Coughlin complained about the behavior.  Holly D., 339 F.3d at 1177.  It is undisputed that Coughlin was provided a copy of and knew of the CDCR policy against sexual harassment and that she attended training that included the sexual harassment policy.  (SUF ¶¶ 88-92.) It is further undisputed that Roots and Linden promptly responded to Coughlin's complaint by altering the kitchen schedule to ensure Coughlin and Maugeri did not work together, relieving Maugeri of all supervisory duties, contacting the Amador County Sheriff's Department to report Mauger's conduct, reporting Coughlin's complaint to the CDCR

Office of Civil Rights, commencing the "local intervention process,"
advising Coughlin of her right to complain directly to the Office of
Civil Rights, the DFEH, or the EEOC, and eventually placing Maugeri on
Administrative Time Off. (Id. ¶¶ 48-49.)  Therefore, CDCR has
satisfied the first prong of the "reasonable care" defense.

However, CDCR has not sustained its summary judgment burden
of showing as a matter of law that Coughlin "unreasonably failed to
take advantage of [the] preventive or corrective opportunities
provided by [CDCR] or to avoid harm otherwise." Holly D., 339 F.3d at
1177.  The following comprises CDCR's showing on these issues:

> In waiting until November 8, 2007, Ms. Coughlin
> unreasonably failed to take advantage of the
> corrective and preventative opportunities afforded
> to her.  Had Ms. Coughlin promptly reported
> Maugeri's conduct when it first occurred, she could
> have prevented further misconduct from occurring.
> For instance, Ms. Coughlin claims that shortly
> after she began working at [Pine Grove] Maugeri
> became "fliratious" with her, and commented four
> times on her hair and eyes between October 2006 and
> October 13, 2007.  She also alleges that in late
> September 2007 Maugeri told her he was aroused when
> she talked about pedicures, and asked her to touch
> his hands.  Ms. Coughlin could and should have
> reported this conduct when it occurred, and she
> chose not to.  She unreasonably failed to [] report
> this conduct when it occurred.  Further, she knew
> that Maugeri was interviewing for the supervisor
> position, and believed he would likely receive the
> promotion.  She failed to alert [Pine Grove] or
> anyone at CDCR of Maugeri's conduct at any point
> prior to his promotion.

(Mot. 19:13-24.)  CDCR essentially makes two arguments: first, that
Coughlin acted unreasonably by not reporting Maugeri's earlier conduct
between October 2006 and October 13, 2007; and second, that Coughlin
knew Maugeri was interviewing for the supervisor position, and
believed he would likely receive the promotion, yet she failed to

1  alert Pine Grove or anyone at CDCR of Maugeri's behavior at any point
2  prior to his promotion.

3       However, the parties' agree it is undisputed that even
4  though Maugeri's actions between October 2006 and October 13, 2007
5  made Coughlin "uncomfortable," she "was not offended" during this time
6  period. (SUF ¶ 21.)  Further, CDCR has not provided evidence
7  supporting its factual assertions in its second argument.  Therefore,
8  CDCR's motion based on its <u>Faragher</u>/<u>Ellerth</u> affirmative defense is
9  denied.

10  **B.  Sexual Harassment Under FEHA**

11       CDCR next seeks summary judgment of Coughlin's sexual
12  harassment claim under FEHA, arguing (1) Maugeri and Coughlin were co-
13  workers until October 24, 2007, and (2) Maugeri's conduct was not
14  severe or pervasive.  (Mot. 20:15-21:16.)  Coughlin rejoins, arguing
15  "both . . . Title VII and . . . FEHA cases consider similar factors."
16  (Opp'n 9:3-4.)

17       "The elements of a hostile work environment claim under the
18  FEHA track the elements of such a claim under Title VII." <u>Reiter v.</u>
19  <u>City of Sacramento</u>, 87 F. Supp. 2d 1040, 1041 n.1 (E.D. Cal. 2000).
20  FEHA follows the same analysis as Title VII for purposes of what
21  conduct is "severe and pervasive" enough to constitute a hostile work
22  environment.  <u>See</u> <u>Brooks</u>, 229 F.3d at 923 (stating that "[w]hile
23  [plaintiff] argues that she was subjected to sexual discrimination
24  under Title VII as well as FEHA, we need only assess her claim under
25  federal law because Title VII and FEHA operate under the same guiding
26  principles" and going on to discuss whether the work environment was
27  sufficiently "severe and pervasive" under both statutes).  "Only when
28  FEHA provisions are similar to those in Title VII do [courts] look to

the . . . interpretation of Title VII as an aid in construing the
FEHA." <u>Johnson v. City of Loma Linda</u>, 24 Cal. 4th 61, 74 (2000).
Since what constitutes a hostile work environment under FEHA is
similar to how this issue is determined under Title VII, CDCR's motion
on this ground is denied based on the reasons discussed above in the
decision on CDCR's motion challenging this issue in Coughlin's Title
VII claim.

Coughlin argues Maugeri is a supervisor under FEHA and
therefore CDCR is liable for Maugeri's sexually harassing actions.
"Under the FEHA, an employer is strictly liable for the harassing
actions of its supervisors and agents." <u>Chapman v. Enos</u>, 116 Cal.
App. 4th 920, 928 (2004).

FEHA defines a supervisor as follows:

> [A]ny individual having the authority, in the
> interest of the employer, to hire, transfer,
> suspend, lay off, recall, promote, discharge,
> assign, reward, or discipline other employees, or
> the responsibility to direct them, or to adjust
> their grievances, or effectively to recommend that
> action, if, in connection with the foregoing, the
> exercise of that authority is not of merely routine
> or clerical nature, but requires the use of
> independent judgment.

Cal. Gov. Code. § 12926(r). "We must construe the provisions of the
FEHA broadly, to protect employees' rights to seek and hold employment
without discrimination." <u>Chapman</u> 116 Cal. App. 4th at 931.

> [W]hile full accountability and responsibility are
> certainly indicia of supervisory power, they are
> not *required* elements of . . . the FEHA definition
> of supervisor.  Indeed, many supervisors with
> responsibility to direct others using their
> independent judgment, and whose supervision of
> employees is not merely routine or clerical, would
> not meet these additional criteria though they
> otherwise be within the ambit of the FEHA
> supervisor definition.

Id. at 930 (emphasis in original).  Further, the California appellate court in Chapman cited as "useful, although not controlling" the same EEOC Guidelines discussed above in the decision on Coughlin's Title VII claim.  Id. at 930 n.10 (quoting EEOC Guidelines ¶ III(B)). "[C]onstru[ing] the provisions of the FEHA broadly," and considering Coughlin's evidence  controverting CDCR's position on whether it is exposed to liability under the FEHA based on Maugeri's sexual harassment, requires denial of this portion of CDCR's motion because a genuine issue of material fact exists as to whether Coughlin reasonably believed Maugeri was her supervisor on and after October 13, 2007.  Chapman, 116 Cal. App. 4th at 931; see e.g., Almanza v. Wal-Mart Stores, Inc., No. 06-0553-WBS-GGH, 2007 WL 2274927, **3-4 (E.D. Cal. Aug. 7, 2007) (finding there was evidence suggesting plaintiff could have reasonably believed another employee was her supervisor under FEHA, among other factual disputes, and holding, "Sufficient significant disputes over material facts exist so that the court cannot say at this time that [the employee] was not plaintiff's supervisor as a matter of law."); Beagle v. Rite Aid Corp., No. C 08-1517 PJH, 2009 WL 3112098, at **14-16 (N.D. Cal. Sep. 23, 2009) (finding triable issue of fact as to whether individual constituted a supervisor under FEHA where "he did not direct [plaintiff's] work on a daily basis, but only when [other supervisors] were not on the store premises . . . and [he] could not approve or set vacation days or schedules").  However, for the reasons discussed above in the decision on Coughlin's Title VII claim, Coughlin has failed to raise a genuine issue of material fact as to whether she reasonably believed Maugeri was her supervisor before October 13, 2007.  Therefore, CDCR's summary judgment motion on Coughlin's sexual harassment claim under FEHA is

1  granted concerning Maugeri's behavior before October 13, 2007 and is

2  denied concerning his behavior on and after October 13, 2007.

3  **C.   Retaliation under Title VII and FEHA**

4          CDCR also seeks summary judgment of Coughlin's third and

5  fourth claims in which Coughlin alleges retaliatory harassment under

6  Title VII and FEHA, arguing Coughlin cannot "establish she suffered an

7  adverse employment action or a causal connection." (Mot. 28:1-2.)

8  Coughlin rejoins, arguing she can establish an adverse employment

9  action and its causal connection to her protected activity. (Opp'n

10  16:4-18:6.) Coughlin further argues that her retaliation claim is

11  "reasonably related" to the allegations in her EEOC complaint, and

12  therefore she has not failed to exhaust her administrative remedies.

13  (Opp'n 13:19-21.)

14          Title VII and FEHA retaliation "claims are examined

15  together under the same burden-shifting structure." <u>Brooks</u>, 229 F.3d

16  at 928.

17          To establish a retaliation claim under Title VII, a
           plaintiff must show (1) involvement in a protected
18          activity, (2) an adverse employment action, and (3)
           a causal link between the two. Thereafter, the
19          burden of production shifts to the employer to
           present legitimate reasons for the adverse
20          employment action. Once the employer carries this
           burden, plaintiff must demonstrate a genuine issue
21          of material fact as to whether the reason advanced
           by the employer was a pretext. Only then does the
22          case proceed beyond the summary judgment stage.

23  <u>Id.</u> (citations omitted). Coughlin engaged in a protected activity

24  under both Title VII and FEHA when she reported Maugeri's conduct.

25          Coughlin argues she suffered the following adverse

26  employment actions in retaliation for reporting Maugeri's conduct:

27  Maugeri "being allowed" to live at Pine Grove and "staring" at

28  Coughlin from his house as she entered Pine Grove each morning; having

to work "excessive shifts and hours"; and being ostracized and labeled

a "trouble-maker" by other employees. (Opp'n 16:4-18:6; Compl. ¶¶ 19-

26.)

"An action is cognizable as an adverse employment action
[under Title VII] if it is reasonably likely to deter employees from
engaging in protected activity." <u>Ray v. Henderson</u>, 217 F.3d 1234,
1243 (9th Cir. 2000).

> Among those employment decisions that can
> constitute an adverse employment action are
> termination, dissemination of a negative employment
> reference, issuance of an undeserved negative
> performance review and refusal to consider for
> promotion. By contrast, we have held that
> declining to hold a job open for an employee and
> badmouthing an employee outside the job reference
> context do not constitute adverse employment
> actions.

<u>Brooks</u>, 229 F.3d at 928-29. Under FEHA, an adverse employment action

must "materially affect the terms and conditions of employment."

<u>Yankowitz v. L'Oreal USA, Inc.</u>, 36 Cal. 4th 1028, 1036 (2005).

Coughlin's bare assertion that she was ostracized by her co-

workers and labeled a "trouble-maker" is insufficient to constitute an

adverse employment action under either Title VII or FEHA. <u>See Brooks</u>,

229 F.3d at 929 ("Because an employer cannot force employees to

socialize with one another, ostracism suffered at the hands of

coworkers cannot constitute an adverse employment action."); <u>Strother</u>

<u>v. Southern Cal. Permanente Med. Group</u>, 79 F.3d 859, 869 (9th Cir.

1996) ("[M]ere ostracism in the workplace is not enough to show an

adverse employment decision."); <u>Yankowitz</u>, 36 Cal. 4th at 1036 (an

adverse employment action must "materially affect the terms and

conditions of employment").

1    Additionally, Coughlin's assertion that Maugeri "stared" at
2    her is insufficient to constitute an adverse employment action.
3    Hardage v. CBS Broadcasting, Inc., 427 F.3d 1177, 1189 (9th Cir. 2005)
4    (citing and quoting Kortan v. California Youth Authority, 217 F.3d
5    1104, 1112 (9th Cir. 2000) for the proposition that "the supervisor's
6    hostile stares . . . were insufficient to preclude summary judgment
7    dismissing plaintiff's retaliation claim").  Nor has Coughlin showed
8    that the hostile stares about which she argues "materially affect[ed]
9    the terms and conditions of her employment." Yanowitz, 36 Cal. 4th at
10   1036.  Further, it is undisputed that Coughlin reported these "stares"
11   to Roots and that Roots warned Maugeri to avoid contact with and to
12   stop staring at Coughlin.  (SUF ¶¶ 53-55.)

13   Coughlin also fails to show that her assertion that she was
14   required to work excessive shifts and hours constitutes an adverse
15   employment action.  Coughlin testified that after Maugeri was placed
16   on Administrative Time Off, Roots asked her "How are you doing[?]"
17   (Coughlin Dep. 223:15-17.)  Coughlin avers she responded:

18       I said, I'm doing okay, but I need some help.  And
         he said, Well, you know, we are just waiting on
19       Livescan.  And I said, I'm probably good for 30
         days.  You can do almost anything for 30 days as
20       long as there is a light at the end of the tunnel.
         And that's the only conversation that Mike and I
21       had about it.

22   (Coughlin Dep. 223:18-24.)  It is undisputed that CDCR paid other CDCR
23   employees overtime to work in the kitchen as relief for Coughlin until
24   Sharon Bauer and Cynthia Wilson began work in March.  (SUF ¶ 76.)
25   Coughlin testified that correctional officers covered "several"
26   weekends during this period of time.  (Coughlin Dep. 226:7-16.)
27   Moreover, CDCR has provided "monthly attendance reports" which show
28   that in December 2007, Coughlin worked 15.75 hours of overtime and had

twelve days off; in January 2008, Coughlin worked 43.75 hours of overtime and had eleven days off; and in February 2008, Coughlin worked 29.25 hours of overtime and had thirteen days off.  (Brizzi Decl. ¶¶ 8-10, Ex. 3.)  Coughlin disputes these figures, but has not provided evidence controverting them.

Further, even if Coughlin could establish that her extra shifts were adverse employment actions, CDCR has presented evidence that it obtained part-time staff to assist Coughlin in the kitchen and that there was an administrative delay in hiring additional permanent kitchen staff.  Coughlin has not presented evidence demonstrating that these legitimate reasons for the shortage of kitchen staff are pretextual.

Coughlin also complains about the schedule she had after Wilson began as kitchen supervisor in March 2008.  Coughlin argues that Roots somehow participated in assigning Coughlin unpleasant duties and shifts.  However, Coughlin provides no evidence supporting her argument that Roots participated in assigning duties to the cooks or was involved with creating the schedule for the cooks.

Therefore, CDCR's summary judgment motion on Coughlin's retaliatory harassment claims under Title VII and FEHA is granted.  **D.**

**Failure to Prevent Harassment Under FEHA**

Finally, CDCR seeks summary judgment of Coughlin's fifth claim for failure to prevent harassment under FEHA, arguing "Coughlin cannot establish that CDCR failed to take reasonable steps to prevent sexual harassment."  (Mot. 34:11-12.)  Coughlin counters that this claim is based on the following:  "Maugeri was permitted to live in state housing and Roots had the authority to prevent that.  [Coughlin] came to work at odd hours and Maugeri would stare at her and make her

uncomfortable.  She was told by administration that they could not
guarantee her safety." (Opp'n 18:10-15.)  Coughlin further argues
that "the scheduling and assignment of kitchen duties were
inequitable." (Opp'n 18:16-18.)

Coughlin's fifth claim is alleged under 12940(k) of the
FEHA.  To maintain this claim, Coughlin must establish the usual tort
elements: duty of care, breach of duty, causation and damages.
Trujillo v. North County Transit Dist., 63 Cal. App. 4th 280, 286-287
(1998).  However, Coughlin's conclusory assertions do not establish a
duty concerning the matters on which she relies, and even assuming the
existence of a duty, she has not shown breach of that duty.

Further, CDCR argues that "the mere fact that sexual
harassment occurred is insufficient to establish a defendant's
negligent failure to prevent harassment." (Supplemental Reply 16:8-
9.)  "Employers are required to 'take all reasonable steps necessary
to prevent discrimination' in the workplace.  One such reasonable
step, and one that is required in order to ensure a
discrimination-free work environment, is a prompt investigation of the
discrimination claim." California Fair Employment and Housing Com'n
v. Gemini Aluminum, 122 Cal. App. 4th 1004, 1024 (2004) (citation
omitted).  Coughlin does not dispute the reasonable steps CDCR
established to prevent the sexual harassment to which Maugeri
allegedly subjected Coughlin. (SUF ¶¶ 88-92.)  It is undisputed that
CDCR had a no-harassment policy and that all CDCR employees, including
Coughlin, received training on that policy, and Coughlin could have
reported the harassment to CDCR under that policy but waited until
after Maugeri was promoted to report the sexual harassment. (SUF ¶¶
46, 88-92.)

27

1  Therefore, CDCR's summary judgment motion on Coughlin's

2  "failure to prevent harassment" claim is granted.

### IV.  Conclusion

4  For the stated reasons, CDCR's summary judgment motion is

5  GRANTED on Coughlin's first and second claims for vicarious liability

6  for sexual harassment under Title VII and FEHA based on Maugeri's

7  actions occurring before October 13, 2007; DENIED as to Coughlin's

8  first and second claims for vicarious liability for sexual harassment

9  under Title VII and FEHA based on Maugeri's actions on and after

10 October 13, 2007; GRANTED on Coughlin's third and fourth claims for

11 retaliation under Title VII and FEHA; and GRANTED on Coughlin's fifth

12 claim for failure to prevent harassment under FEHA.

13 Dated:  April 23, 2010

15 _____
   GARLAND E. BURRELL, JR.
16 United States District Judge